1. James Davis Bennett, Pro Se
   FCI Safford
2. Federal Correctional Institution
   P.O. Box 9000
3. Safford, AZ  85548

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC 2 9 2010

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

7.

UNITED STATES DISTRICT COURT
FOR THE
CENTRAL DISTRICT OF CALIFORNIA

9. UNITED STATES OF AMERICA,      )   CASE NO. SA CR 03-25(B)AHS
                                  )
10.     Plaintiff,                )   DEFENDANT'S SENTENCING
                                  )   POSITION RELATED TO RE-
11.   vs.                         )   SENTENCING; 18 U.S.C. § 3553
                                  )   AND 18 U.S.C. § 3742
12. JAMES DAVIS BENNETT,          )
                                  )
13.     Defendant.                )
                                  )
14. _____)

15.     September 10, 2010, The United States Court of Appeals

16. for the Ninth Circuit vacated Defendant's Equicredit convict-

17. ions in counts 8-10 and remanded for resentencing.

18.     In 2005 the Supreme Court decided United States v. Booker,

19. 543 U.S. 220. In Booker, the Court held that the imposition of

20. an enhanced sentence under the federal sentencing guidelines

21. based on the sentencing judge's determination of a fact (other

22. than a prior conviction) that was not found by the jury or

23. admitted by the defendant  violated the Sixth Amendment.

24.     This filing will prove that a) the indictment, convict-

25. ions, and sentencing were obtained through fraud; b) assuming

26. arguendo that fraud was not used to procure the indictment,

27. convictions, and sentencing Defendant's justifiable incarcer-

28. ation-consistent with the Sixth Amendment and Booker- has long

-1-

1. since expired; and c) the admitted perjury of Flagstar Bank-
2. alleged to have been victim in counts 5-7-dictates that the
3. indictment be dismissed with prejudice.

**FACTUAL BACKGROUND**

5.   In April 2006, Defendant inquired as to why the US
6. Attorney-Brett A. Sagel-was not licensed to practice law when
7. he conducted the trial (exhibit G). We believe that the fraud
8. and mishaps, which occurred in this case, are directly re-
9. lated to the lack of ethical standards associated with the
10. inability to obtain a license to practice law.

11.   In 1999, Gerald Bernard Duncan-owner of Long Beach City
12. Mortgage-was sentenced for defrauding CIT Group, the Lender
13. in count one of the Defendant's indictment. That same year
14. he contracted with Flagstar Bank to sale mortgage loans made
15. by his company Long Beach City Mortgage (exhibit A). Flagsar
16. was the alleged lender in counts 5-7.

17.   In 2003, US Attorney David A. Hoffer-currently a Cali-
18. fornia Superior Court Judge in Orange County California-
19. presented testimony to the Grand Jury convincing them that
20. Flagstar loaned the money for the purchase of the three
21. properties in counts 5-7 (exhibit B).

22.   In 2004, US Attorneys Lawrence E. Kole and Brett A.
23. Sagel, along with Judge Alicemarie H. Stotler, all admitted
24. that Gerald Duncan's Long Beach City Mortgage was in fact the
25. true lender making the loans in counts 5-7 (exhibit C).

26.   In 2005, US Attorney Brett A. Sagel presented Flagstar's
27. testimony to the Trial Jury stating that Flagstar made the
28. loans in counts 5-7 (exhibit D).

-2-

1.      In 2009, Flagstar Bank, lender alleged in counts 5-7,
2. recants its trial testimony by stating that Gerald Duncan's
3. Long Beach City Mortgage was in fact the true lender making
4. the loans in counts 5-7 (exhibit E).

5.      In December 2005, after Plaintiff and Defendant both
6. rested their cases and outside the presence of the jury,
7. Judge Stotler, US Attorney Brett A. Sagel, and appointed
8. defense counsel-Michael S. Meza-discuss changing the charges
9. by presenting 25 uncharged counts to the Jury in an indict-
10. ment called the Trial Indictment.

11.      The Court acknowledges receipt of the indictment from
12. Brett A. Sagel (ex F-p 20), discusses the use of Mail Fraud
13. as an allegation for all 25 uncharged counts (ex F-p 31),
14. discusses the cover up by using a verdict form rigged to
15. appear the Jury deliberated on the Second Superseding In-
16. dictment never submitted (ex F-p 59-60), and discuss a number
17. of uncharged counts listing Equicredit as the victim, one
18. of which found its way on the Judgment Order as victim in
19. count of conviction two (ex F-p 53 & JNC).

20.      In January 2006, the Court presents for deliberations
21. the uncharged counts in the Trial Indictment in place of the
22. charged counts in the Second Superseding Indictment (ex F-p
23. 3).

24.      In January 2006, after being deceived into deliberating
25. on the uncharged Trial Indictment, the Jury unsuspectingly
26. return verdicts, using the Court's rigged verdict form, in
27. the Second Superseding Indictment never submitted for de-
28. liberations (ex F-p 7).

In October 2006, during sentencing the Defendant, having sat through the entire charade over the course of several years, asks the Court where did the 25 uncharged counts come from and what was the sentence to be founded on; the charged counts or the uncharged counts (ex F-p 9). The court refused to answer (ex F-p 22).

## DEFENDANT'S POSITION RELATED TO RESENTENCING

**A)** The indictment, convictions, and sentencing were obtained through fraud.

Misrepresentations by officers of the court (lawyers and judges) are held as "fraud on the court" as they may influence the decision of the court and the integrity of the judicial process is undermined. Hazel-Atlas v. Hartford-Empire, 322 U.S. 238 (1944) (concealment of the authorship of an article presented as evidence to the court by lawyers of Hartford was fraud on the court requiring the recall of mandate nine years after its issuance and complete denial of relief to Hartford); In re Intermagnetics, 926 F.2d 912, 916 (9th Cir. 1991).

Actions to remedy such fraud on the court were held not to require a showing of prejudice and are not barred by lack of due diligence of litigants at the lower courts, as it tampers with the administration of justice, defiles the court itself & is a wrong against the institutions set up to protect and safeguard the public. Hazel-Atlas, 322 U.S. at 246-47; Dixon v. CIR, 316 F.3d 1041, 1046 (9th Cir. 2003); Pumphrey v. K.W. Thompson, 62 F.3d 1128, 1133 (9th Cir. 1995).

-4-

1.     In the instant case we have US Attorney Hoffer convinc-
2. ing the Grand Jury through the use of perjury to list Flagstar
3. Bank as the lender in counts 5-7. We have Judge Stotler, US
4. Attorneys Kole and Sagel, and appointed defense attorney Meza
5. all admitting before trial that Long Beach City Mortgage was
6. the true lender. Then, we have perjured testimony by Flagstar
7. being presented to the jury to convict by US Attorney Sagel.
8. The convictions and sentence related to Flagstar's counts
9. have now been invalidated by Flagstar's admissions during a
10. civil suit that in fact they were not the lender because it
11. was Long Beach City Mortgage who made the loans to the
12. borrowers.
13.     Moreover, Judge Stotler, US Attorney Sagel, and defense
14. Attorney Meza all discuss how to apply Mail Fraud to 25
15. uncharged counts in a Trial Indictment submitted for de-
16. liberations. And, although the 12 count Second Superseding
17. Indictment was never used by the jury, it is the only in-
18. dictment which was used to support a 121 month prison term
19. despite the Probation's Department's use of over 25 counts
20. in paragraph 43 of the Presentencing Report to calculate
21. victim losses related to the 121 month sentence.
22.     The above misrepresentations would certainly fall within
23. the four corners of the definition of "fraud on the court"
24. as described in the cases supra and would not require a
25. showing of prejudice, although prejudice is clearly evident,
26. and are not barred by a lack of due diligence at the lower
27. court.
28. //

**B)** Assuming arguendo that fraud was not used to procure the indictment, the convictions, and the sentence; Defendant's justifiable incarceration-consistent with the Sixth Amendment and <u>Booker</u>-has long since expired.

In <u>Apprendi v. New Jersey</u> (2000) 530 US 466, the United States Supreme Court held that the federal constitution requires that any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the Defendant or proved to a jury beyond a reasonable doubt.

Subsequently, in <u>Blakely v. Washington</u> (2004) 542 US 296, the court held, pursuant to the Constitution's Sixth Amendment right to a jury trial, that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

In Blakely, the Supreme Court stated "[a]ny evaluation of Apprendi's 'fairness' to criminal defendants must compare it with the regime it replaced, in which a defendant, with no warning in either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment...based not on facts proved to his peers beyond a reasonable doubt, but on facts extracted after trial from a report compiled by a probation officer who the judge thinks more likely got it right than got it wrong. id at 418-419.

And, in the <u>United States v. Booker</u> the Supreme Court held that the imposition of an enhanced sentence under the

1. Federal Sentencing Guidelines based on the sentencing judge's
2. determination of a fact (other than a prior conviction) that
3. was not found by the jury or admitted by the Defendant
4. violated the Sixth Amendment.

5.     In the instant case, if we were to assume that the
6. Court's Judgment and Probation/Commitment Order related to
7. the Defendant to be truthful, the jury only established that
8. Defendant was guilty of ten counts of "Aiding and Abetting"
9. wire fraud and bank fraud (see exhibit B of the Government's
10. Status Report). The Court's establishment of other facts used
11. to enhance the sentence, such as associated losses; more
12. than one victim; sophisticated means; organizer/role in
13. offense and abuse of position of trust/special skills; finds
14. no support in the jury's verdict nor do they even appear on
15. the Court's Commitment Order as such.

16.     As clearly articulated in Booker, the Court's imposition
17. of an enhanced sentence under the Federal Sentencing Guide-
18. lines using the above facts, established long after trial,
19. makes the use of those facts "to support a sentence exceeding
20. the maximum authorized by the facts established by the jury
21. is a violation of the Sixth Amendment" and an unconstitut-
22. ional sentence.

23.     Therefore, the Defendant's position is that he be re-
24. sentenced based on the jury's determination of Aiding and
25. Abetting which only allows for a simple sentence based
26. on their determinations, which, when you substract the
27. previous unconstitutional enhancements, results in a Total
28. Offense Level equal to the Base Offense Level of 6 points.

-7-

1. Using a Criminal History Category of III, this would mandate
2. a Guideline Sentence of 2-8 months, far less than the 59
3. months already served by the Defendant. Beside, when you
4. remove the Equicredit counts related to the recent reversal
5. (counts 8-10) and the Flagstar Bank counts  (counts 5-7) due
6. to their admitted perjury, you end up with the wire fraud
7. counts related to 1-4, which carries a maximum possible sen-
8. tence of 60 months pursuant to the statutes in place during
9. the time of the alleged violations. Either way, Defendant
10. would have completed his term of imprisonment long ago.
11. C) The admitted perjury of Flagstar Bank, alleged to have been
    victim in counts 5-7, dictates that the indictment be
12. dismissed with prejudice.
13. Federal courts have supervisory powers to reverse a
14. conviction or dismiss an indictment for the following three
15. legitimate reasons: (i) to implement a remedy for the pre-
16. judicial violations of a recognized statutory or constitution-
17. al right; (ii) to preserve the judicial integrity by ensuring
18. that a conviction rests on appropriate consideration valid
19. before a jury; or (iii) to deter future misconduct. U.S. v.
20. Chapman, 524 F.3d 1073, 1085-88 (9th Cir. 2008).
21. Although the appropriate remedy for prejudicial violat-
22. ions of statutory or constitutional rights will usually be a
23. new trial, dismissal of the indictment is justified when the
24. violations rise to flagrant or reckless misconduct ignoring
25. constitutional or professional obligations, Defenant is pre-
26. judiced substantially by the individual or cumulative effects
27. of the violations, and no lesser remedial action is appro-
28. priate. Id at 1086-87.

1.     Federal courts may also dismiss an indictment on the

2. ground of outrageous government conduct if the conduct amounts

3. to a due process violation (Governmental conduct must be so

4. grossly shocking and so outrageous as to violate the universal

5. sense of justice. Id. at 1084-85 (quoting U.S. v. Simpson, 927

6. F.2d 1088, 1090 (9th Cir. 1991).

7.     In this case we see US Attorney David A. Hoffer knowingly

8. used  perjury to over come what the Circuit has already de-

9. termined not to be a crime. Equicredit and Long Beach City

10. Mortgage do not fit the definition of a "financial institut-

11. ion" as defined in 18 U.S.C. § 20. Because Long Beach City

12. Mortgage did not fit the definition, US Attorney David Hoffer

13. lied to the Grand Jury and US Attorney Brett A. Sagel lied to

14. the Trial Jury. They told these juries that Flagstar Bank

15. was the lender in counts 5-7. Flagstar now admits to the

16. truth that Long Beach City Mortgage was actually the lender

17. in counts 5-7 (exhibits A thru E).

18.     Furthermore, in his zeal to obtain notiety while using

19. his position to play fraud games with the Defendant and his

20. family, US Attorney Brett A. Segal swapped a 12 count Second

21. Superseding Indictment with a 25 count Trial Indictment then

22. used a rigged verdict form, after submitting the Trial

23. Indictment for jury deliberations, to return what appeared to

24. be verdicts in the Second Superseding Indictment which was

25. concealed from the jury. Defendant would later be sentenced

26. to prison based on a Second Superseding Indictment never seen

27. or reviewed by the jury (exhibit F). The above conduct appears

28. to be sufficient to justify dismissing the indictment with

1. prejudice.

## CONCLUSION

Because we have presented substantial evidence proving an incredible amount of fraud we see no judicial reasons justifying the continuation of the Defendant's incarceration or to continue to pretend this case has any proveable merit remaining. It is, and always has been, a case motivated by some hidden hatred and will surely end in more and more problems as litigation continues. For these reasons we ask for a swift release by whatever means necessary.

Dated this 3rd day of December 2010,

By: _____

James Davis Bennett/Reg#32589-112
FCI Safford
Federal Correctional Institution
P.O. Box 9000
Safford, AZ  85548

//
//
//

## CERTIFICATE OF SERVICE

**CASE NAME:** United States of America vs James Davis Bennett

**CASE NUMBER:**  SA CR 03-25(B)AHS


I certify that I've served the Defendant's Sentencing Position
on the parties listed below in a manner described:


| PARTY SERVED | METHOD OF SERVICE | DATE SERVED |
|---|---|---|
| Attn: Brett A. Sagel<br>US Attorney's Office<br>411 West Fourth Street #8000<br>Santa Ana, Ca.  92701 | U.S. Mail | 12·7·2010 |
| Attn: Wendy Shore/<br>Supervisor<br>United States Probation Dept.<br>411 West Fourth Street<br>Santa Ana, Ca  92701 | U.S. Mail | 12·7·2010 |




_____                    12·6·2010
James Davis Bennett                                    Date

EXHIBIT A

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 10/28/99

------------------------------------------------------------------

_CASE NO. BA171154

THE PEOPLE OF THE STATE OF CALIFORNIA
VS.
DEFENDANT 02:  GERALD BERNARD DUNCAN

------------------------------------------------------------------

INFORMATION FILED ON 11/04/98.


COUNT 03: 532A(1) PC FEL  - MAKE FALSE FINANCIAL STATEMENT.
COUNT 08: 532A(1) PC FEL  - MAKE FALSE FINANCIAL STATEMENT.
COUNT 09: 487(A) PC FEL  - GRAND THEFT:PRPRTY OVER $400.
COUNT 16: 118 PC FEL  - PERJURY.


ON 10/28/99 AT  830 AM  IN L.A. SUPERIOR - CENTRAL DEPT 107

CASE CALLED FOR PROBATION AND SENTENCE HEARING

PARTIES: MORRIS B. JONES (JUDGE) ANNIE BARTON   (CLERK)
         K. PARKER-RIJKE  (REP)       HYMAN SISMAN  (DDA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY CARL E. DOUGLAS PRIVATE
COUNSEL

(PROBATION #X1712318)

THE COURT STATES IT HAS READ AND CONSIDERED THE PROBATION

OFFICER'S REPORT AND THE SENTENCING MEMORANDUM SUBMITTED
BY DEFENSE COUNSEL.

DEFENDANT WAIVES ARRAIGNMENT FOR JUDGMENT AND STATES THERE IS NO LEGAL CAUSE
WHY SENTENCE SHOULD NOT BE PRONOUNCED. THE COURT ORDERED THE FOLLOWING
JUDGMENT:

AS TO COUNT  (03):

IMPOSITION OF SENTENCE SUSPENDED

DEFENDANT PLACED ON FORMAL PROBATION

FOR A PERIOD OF 036 MONTHS UNDER THE FOLLOWING TERMS AND CONDITIONS:

SERVE 270 DAYS IN LOS ANGELES COUNTY JAIL

IN ADDITION:

-THE DEFENDANT IS TO PAY A RESTITUTION FINE PURSUANT TO SECTION

PAGE NO.   1          PROBATION AND SENTENCE HEARING
                      HEARING DATE: 10/28/99

CASE NO. BA171154
DEF NO.  02
DATE PRINTED 10/28/99

1202.4(B) PENAL CODE IN THE AMOUNT OF $ 800.00.

-MAKE RESTITUTION TO THE VICTIM PURSUANT TO SECTION 1203.04 PENAL
CODE IN THE SUM OF $29,440.32 (CIT GROUPT) JOINTLY AND SEVERALLY
WITH CO-DEFENDANT ERIC VAUGHN WILLIAMS.

-SEEK AND MAINTAIN TRAINING, SCHOOLING OR EMPLOYMENT AS APPROVED
BY THE PROBATION OFFICER.

-MAINTAIN RESIDENCE AS APPROVED BY THE PROBATION OFFICER.

-SUBMIT PERSON AND PROPERTY TO SEARCH OR SEIZURE AT ANY TIME OF
THE DAY OR NIGHT BY ANY LAW ENFORCEMENT OFFICER OR BY PROBATION

OFFICER WITH OR WITHOUT A WARRANT.

-OBEY ALL LAWS AND ORDERS OF THE COURT.

-OBEY ALL RULES AND REGULATIONS OF THE PROBATION DEPARTMENT.

-USE ONLY TRUE NAME WITH GOVERNMENT AND POLICE OFFICIALS, WHICH
IS  GERALD BERNARD DUNCAN.

-DEFENDANT TO REPORT TO THE PROBATION OFFICER WITHIN 48 HOURS OF
TODAY'S DATE (CREANSHAW AREA OFFICE).

-PAY THE COSTS OF PROBATION SERVICES (PURSUANT TO 1203.1B PC) TO
THE PROBATION OFFICER IN THE AMOUNT THE PROBATION OFFICER SHALL
PRESCRIBE.

-DEFENDANT ACKNOWLEDGES TO THE COURT THAT THE DEFENDANT
UNDERSTANDS AND ACCEPTS ALL THE PROBATION CONDITIONS, AND
DEFENDANT AGREES TO ABIDE BY SAME.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

-A STAY OF EXECUTION AS TO  COUNTY JAIL TIME IS GRANTED TO
NOVEMBER 29, 1999. DEFENDANT IS ORDERED TO RETURN ON THAT DATE.

-(PROBATION #X1712318)

COUNTS 3, 8, 9 AND 16 ARE TO RUN CONCURRENTLY WITH EACH OTHER.

DEFENDANT IS ORDERED TO SPEND THE FIRST 90 DAYS IN THE COUNTY
JAIL.  THEREAFTER, DEFENDANT MAY BE PLACED IN A HOUSE ARREST
PROGRAM UPON ACCEPTANCE IN A HOME MONITORING PROGRAM.

MATTER IS SET FOR COUNTY JAIL SURRENDER ON NOVEMBER 29, 1999,
AT 8:30 A.M. IN THIS DEPARTMENT.

COUNT (03): DISPOSITION: CONVICTED

DMV ABSTRACT NOT REQUIRED

PROBATION AND SENTENCE HEARING
PAGE NO.   2      HEARING DATE: 10/28/99

CASE NO. BA171154
DEF NO.  02

DATE PRINTED 10/28/99

AS TO COUNT  (08):

IMPOSITION OF SENTENCE SUSPENDED

DEFENDANT PLACED ON FORMAL PROBATION

FOR A PERIOD OF 036 MONTHS UNDER THE FOLLOWING TERMS AND CONDITIONS:

SERVE 270 DAYS IN LOS ANGELES COUNTY JAIL

COUNT (08): DISPOSITION: CONVICTED

DMV ABSTRACT NOT REQUIRED

AS TO COUNT  (09):

IMPOSITION OF SENTENCE SUSPENDED

DEFENDANT PLACED ON FORMAL PROBATION

FOR A PERIOD OF 036 MONTHS UNDER THE FOLLOWING TERMS AND CONDITIONS:

SERVE 270 DAYS IN LOS ANGELES COUNTY JAIL

COUNT (09): DISPOSITION: CONVICTED

DMV ABSTRACT NOT REQUIRED

AS TO COUNT  (16):

IMPOSITION OF SENTENCE SUSPENDED

DEFENDANT PLACED ON FORMAL PROBATION

FOR A PERIOD OF 036 MONTHS UNDER THE FOLLOWING TERMS AND CONDITIONS:

SERVE 270 DAYS IN LOS ANGELES COUNTY JAIL

COUNT (16): DISPOSITION: CONVICTED

DMV ABSTRACT NOT REQUIRED

NEXT SCHEDULED EVENT:
11/29/99   830 AM   SURRENDER   DIST L.A. SUPERIOR - CENTRAL DEPT 107

NEXT SCHEDULED EVENT 2:

OR DISCHARGED

CUSTODY STATUS: ON PROBATION

PROBATION AND SENTENCE HEARING
                                         HEARING DATE: 10/28/99

CONSENT RESOLUTION
OF
BOARD OF DIRECTORS
OF
Long Beach City Mortgage Investments Inc.
(The Lender)

I, Gerald B. Duran , being duly elected President of
(Officer's Name)                                    (Officer's Title)
Long Beach City Mptg. In. Inv. , (The Lender) hereby certify that the following
resolution was passed by the Board of Directors of the Lender at a meeting called and
held on 7/8/99 . 1998 quorum being present:
                    1999

RESOLVED, that Flagstar Bank, FSB, (The Bank) is hereby authorized and directed
to act for the described assignment of residential first mortgages which are being
serviced by the Bank, and certain private investors.

FURTHER RESOLVED, that solely for the purpose of such execution of assignments,
the following named employees of Flagstar Bank, FSB are appointed as Vice Presidents
with said Bank, which appointments will expire at the direction of said Bank or on
December 31, 2020.

Barbara S. Robinson - Vice President        Joan H. Anderson - Vice President
Andrea L. Drapek - Vice President           Debra Strong - Vice President
Amanda E. Dafoe - Vice President            John Marecki - Vice President
Shari H. Canfield - Vice President          Kathy Dettloff - Vice President
Adelita A. Shubert - Vice President         MaeLynn Campbell - Vice President
Barbara A. Johnson - Vice President         Deborah Lowry - Vice President
Elaine A. Skolnik - Vice President          Jean R. Garrick - Vice President
Lynn P. Lico - Vice President               Mary Kay McGuire - Vice President

FURTHER RESOLVED, that notwithstanding any of the above describe[d]
authorization, directive and appointments are limited exclusively to assignments [of]
mortgage, the servicing of which will be purchased by Flagstar Bank pursuant to
Business Contract with said Bank.

Certification dated 7/9 , 1998
                                1999

Gerald B. D[...]
                                (Officer's Signat[ure])

Gerald B. Duran
                                (Officer's typed name and T[itle])

(Corporate Seal)

EXHIBIT B

1    FEDERAL GRAND JURY

2    CENTRAL DISTRICT OF CALIFORNIA

3

4

5    Proceedings had before the Grand Jury

6    of the United States of America, in and

7    for the Central District of California,

8    at the United States District Courthouse,

9    411 West Fourth Street, Room 8110,

10    Santa Ana, California, commencing at

11    10:07 a.m., on Wednesday, January 29, 2003.

12

13

14    PRESENT:

15        DAVID A. HOFFER
          ASSISTANT U.S. ATTORNEY
16

17        THE WITNESS:  MICHAEL E. RAWLINS

18

19    REPORTED BY:  BARBARA C. MEEK, CSR NO. 8090

20

21

22

23    # Seijas Court Reporters

24    *A Professional Corporation*
     *625 Fair Oaks Avenue, Suite 245, South Pasadena, California 91030*
25     *(626) 799-0810 ~ Fax (626) 799-5565*

1    SANTA ANA, CALIFORNIA; WEDNESDAY, JANUARY 29, 2003

2                     1:01 P.M.

3          MR. HOFFER:   We'll go back on the record in

4    United States versus Bennett.

5    Q.    Agent Rawlins, could you go over with the Grand

6    Jury the loan referenced in count five as it appears on

7    the chart.

8    A.    Sure.

9          Count five relates to a property located at

10   245 West 56th Street in Los Angeles, and the seller of

11   that property was the Santa Monica Bank.   The sales

12   price was $180,000 to the borrower, the intermediary,

13   Gregory Wright, who is one of the children of Pamela

14   Woodward from a previous marriage.

15         The inflated price then was $285,000 to the

16   straw borrower, Arturo Vargas, which resulted in a loan

17   amount of $256,000 to Flagstar Bank.

18   Q.    And Arturo Vargas was also the straw buyer in the

19   loan referenced in count one; correct?

20   A.    That is correct.

21   Q.    Now, this was -- this loan was made by Flagstar

22   Bank.   Are they federally insured?

23   A.    Yes, they are.

24   Q.    Did you obtain the loan package from the lender

25   in this case?

                                                        72

1    on this transaction?

2    A.    Yes.

3    Q.    That's Grand Jury Exhibit 47; correct?

4    A.    Correct.

5    Q.    And it shows 56th Street and the amount of

6    $7,810; correct?

7    A.    Right.

8    Q.    And that's Government's Exhibit 47; correct?

9    A.    Correct.

10   Q.    Steve Rogers also got a commission check on this

11   loan, didn't he?

12   A.    Yes, I believe so.

13   Q.    And did this loan also go into default?

14   A.    Yes.

15   Q.    And did the bank suffer a loss on the

16   foreclosure?

17   A.    Yes.

18   Q.    Take a look, if you would, at the chart.  If you

19   can advise the Grand Jury of what's referenced in the

20   loan connected to count six.

21   A.    Certainly.  This relates to a property at 1412

22   West 49th Street in Los Angeles.

23          1412 West 94th Street, Los Angeles.  The

24   seller of the property is Howard Wilhite,

25   W-I-L-H-I-T-E.  The sales price to Pamela Woodward was

                                                    79

1    a hundred and eighty thousand dollars.

2          And then we have Pamela Woodward selling the

3    property for $280,000 to Rebecca Fernandez, who was the

4    wife -- now the ex-wife -- of Bernard Fernandez.   The

5    loan amount is $252,000, the lender being Flagstar

6    Bank.

7    Q.   And you testified earlier that Bernardo Fernandez

8    was another agent at West Belle who has already pled

9    guilty in this case; correct?

10   A.   That's correct.

11   Q.   And the lender in this is again Flagstar Bank;

12   correct?

13   A.   That's correct.

14   Q.   Did you obtain a loan package from the lender?

15   A.   I did.

16   Q.   And does the package contain false and fabricated

17   documents?

18   A.   Yes, it does.

19   Q.   Does it contain a loan application?

20   A.   Yes.

21   Q.   Is this the loan application referenced in Grand

22   Jury Exhibit 48?

23   A.   Yes, it is.

24   Q.   And you see it shows the loan amount of $252,000?

25   A.   Correct.

80

SEIJAS COURT REPORTERS

1    A.    Yes, it did.

2    Q.    And did the bank suffer a loss on this loan?

3    A.    Yes.

4    Q.    If you could advise the Grand Jury of the loan

5    referenced in count seven.

6    A.    Certainly.

7          It relates to a property located at 768 East

8    43rd Street in Los Angeles.  The true seller of the

9    property is Alfredo Chavez, and the true sales price

10   was a hundred and seventy-two thousand five hundred

11   dollars to Jeannette Brown, once again the mother of

12   James Bennett.

13         Brown in turn sold the property to William

14   Rogers father of Steve Rogers, for $275,000, obtaining

15   the loan to do so in the amount of $247,500, with the

16   lender being Flagstar Bank.

17   Q.    Did you obtain the loan package from the lender?

18   A.    Yes.

19   Q.    Does this package also contain false and

20   fabricated documents?

21   A.    Yes, it does.

22   Q.    Does it contain a loan application?

23   A.    Yes.

24   Q.    Is that the loan application referenced in Grand

25   Jury Exhibit 56?

                                                  86

EXHIBIT C

1   BUT MY UNDERSTANDING IS THAT FLAG STAR -- I'LL CALL FLAG STAR

2   THE LENDER. I REALIZE FLAG STAR IS REALLY IN THE SECONDARY

3   MARKET. THEY DIDN'T ACTUALLY MAKE THE ORIGINAL LOAN. THEY

4   PURCHASED IT FROM THE LENDER AND THEN HELD IT. BUT I WILL

5   CALL -- FOR EASE OF ARGUMENT I WILL CALL FLAG STAR THE

6   LENDER, BECAUSE AT THE TIME OF THE FORECLOSURE FLAG STAR WAS

7   HOLDING THE NOTE AS THE MORTGAGEE, I GUESS IT IS.

8        WHEN THE FORECLOSURE OCCURRED, FLAG STAR WAS SIMPLY

9   TAKING BACK THE PROPERTY THAT WAS IN FORECLOSURE. SO I DON'T

10  KNOW THAT COUNSEL IS NECESSARILY CORRECT TO INDICATE THAT

11  THESE PRICES SHOWN IN THESE DOCUMENTS REFLECT AN AUCTION AT

12  WHICH FLAG STAR AND OTHER BIDDERS BID VARIOUS AMOUNTS AND

13  FLAG STAR HAPPENED TO COME OUT ON TOP. I COULD BE WRONG AND

14  COUNSEL COULD BE CORRECT. BUT WITHOUT ANY EVIDENCE HERE,

15  IT'S EQUALLY POSSIBLE AND I THINK MORE LIKELY THAT FLAG STAR

16  SIMPLY WAS THE ONLY ENTITY INVOLVED, SIMPLY TOOK THE PROPERTY

17  BACK AND USED AS THE VALUE THE OUTSTANDING PRINCIPAL AND

18  PROBABLY INTEREST AND OTHER THINGS THAT WERE UNPAID FOR THE

19  VALUE PLACED ON THE PROPERTY IN THE FORECLOSURE.

20       THE INDICATION IN THE AFFIDAVIT THAT THERE WAS A

21  LOSS SUFFERED BY FLAG STAR, IN ORDER FOR THAT TO BE REBUTTED

22  OR CHALLENGED, WHAT WE WOULD NEED TO SEE IS A LATER SALE BY

23  FLAG STAR TO A PRIVATE PARTY OF THE PROPERTIES AND TO SEE THE

24  VALUE IT WAS ULTIMATELY SOLD FOR. AND MY UNDERSTANDING IS

25  THAT THE LOSS FIGURE IS DERIVED FROM WHAT FLAG STAR

Inconsistent
Page Numbers

DATE   10/25/04

1    SO THE AFFIDAVIT PROVIDES FACTS UPON WHICH THE

2    MAGISTRATE JUDGE COULD HAVE MADE AN INFERENCE THAT THE

3    APPRAISAL, IN ADDITION TO THE ESCROW, WAS BEING DONE BY

4    MR. BENNETT OR CERTAINLY BY SOMEONE AFFILIATED WITH HIM BEING

5    MR. BALES' SON-IN-LAW.

TRUE LENDER IN COUNTS 5, 6, AND 7 →

6    THE COURT:  I THINK THE DEFENDANT WAS TRYING TO

7    THROW DOWN THE GAUNTLET TO THE GOVERNMENT TO ADDRESS THE ROLE

8    OF LONG BEACH CITY MORTGAGE, AND THE -- I THINK THE RESPONSE

9    HAS BEEN THAT ESSENTIALLY THAT WAS THE LENDER FOR THE HIGH

10   SECOND PURCHASE.

11   WOULD THAT BE CORRECT?

12   MR. KOLE:  THAT'S CORRECT.  AND, YOUR HONOR, IT IS

13   TRUE THE AFFIDAVIT DOES NOT REFER TO LONG BEACH CITY MORTGAGE

14   BY NAME.  BUT THE AFFIDAVIT ALSO -- THE AFFIDAVIT DESCRIBES A

15   PATTERN THAT THE AFFIANT SAW IN GENERAL INVOLVING, AMONG

16   OTHER COMPANIES, MR. BENNETT'S WESTBELL MORTGAGE COMPANY.

17   BUT IN REGARD TO THESE THREE TRANSACTIONS, THE AFFIDAVIT

18   RIGHT ON ITS FACE DOESN'T SAY THAT THE MORTGAGE COMPANY --

19   THAT WESTBELL MORTGAGE COMPANY WAS INVOLVED, BUT LIMITS IT TO

20   THE OTHERS, MENTIONS MS. SIMON, AND SAID THAT SHE WAS ONLY A

21   FORMER EMPLOYEE.

22   SO IT'S APPARENT -- IT'S APPARENT FROM THE FACE OF

23   THE AFFIDAVIT THAT THE MORTGAGE COMPANY IS SOME OTHER

24   NON BENNETT ENTITY, BECAUSE THERE IS NO CONTENTION THAT THE

25   MORTGAGE COMPANY WAS OWNED BY MR. BENNETT.  AND SO THAT IS

UNITED STATES DISTRICT COURT

(212)

EXHIBIT D

DATE 11/29/05 AUSA SAGEL - QUESTIONS FLAGSTAR - POOLEY

PooLEY 169

1   REPORT BUT DID NOT -- STRIKE THAT.

2            IF THE PERSON'S NAME WHO'S LISTED AS THE APPRAISER

3   OF THE APPRAISAL REPORT DID NOT PREPARE THAT APPRAISAL,

4   WOULD THAT IMPACT -- AND THE LENDER KNEW THAT, WOULD THAT

5   IMPACT THE LENDER'S DECISION TO FUND THE LOAN?

6   A.   YES.

7   Q.   IF THE LENDER KNEW THAT THE APPRAISER WORKED IN THE

8   SAME OFFICE AS THE MORTGAGE COMPANY OR THE LOAN PROCESSOR OF

9   THAT FILE, WOULD THAT IMPACT THE LENDER'S DECISION TO FUND

10  THE LOAN?

11  A.   YES.

12  Q.   YOU WERE ASKED QUESTIONS ABOUT THE CORPORATE ASSIGNMENT

13  DEED OF TRUST?

14  A.   YES.

15  Q.   IS THAT THE PROPER TERMINOLOGY, MORE OR LESS?

16  A.   YES.

17  Q.   WITH REGARDS TO THE THREE PROPERTIES -- WITH REGARD TO

18  THE THREE PROPERTIES, STARTING WITH 245 WEST 56TH STREET, DO

19  YOU KNOW WHO FUNDED THE LOAN ON THAT?

20  A.   ESCROW COMPANY OR TITLE COMPANY.

21  Q.   WHAT LENDER FUNDED THE LOAN ON THAT PROPERTY?  WAS IT

22  FLAGSTAR BANK?

23  A.   YES, IT WAS FLAGSTAR. → SEE LOAN PURCHASE COMMITMENT TAKEN

24  Q.   DID ANYBODY ELSE FUND IT PRIOR TO FLAGSTAR?   FROM DEFENSE MOTION TO SUPPRESS EXHIBIT 8/13/04

25  A.   NO.

Inconsistent
Page Numbers

170

Q.   DID LONG BEACH CITY MORTGAGE HAVE THE AUTHORITY TO FUND THIS LOAN WITHOUT FLAGSTAR'S APPROVAL?

A.   THEY HAD A CREDIT APPROVAL FROM THE BORROWER.

Q.   WHAT DOES THAT MEAN?

A.   THEY HAD APPROVAL BASED ON THE DOCUMENTATION THAT WAS SUBMITTED TO US:  THE INCOME, THE ASSETS, THE APPRAISAL.

Q.   SO FLAGSTAR HAD AGREED TO FUND THE LOAN?

A.   BASED ON THAT INFORMATION, YES.

Q.   AT ANY POINT, WAS THIS LOAN FUNDED BY ANYBODY OTHER THAN FLAGSTAR?

A.   NO.

Q.   DID YOU SELL THIS LOAN TO ANYBODY IN THE SECONDARY MARKET?

A.   NOT THAT I'M AWARE OF, NO.

Q.   WOULD FLAGSTAR HAVE SOLD THIS PROPERTY OUT OF FORECLOSURE, IF YOU HAD SOLD IT ON THE SECONDARY MARKET?

A.   ONLY IF WE HAD TO REPURCHASE IT FROM THE LENDER, BECAUSE THEY MAY HAVE FOUND SOMETHING -- FRAUD INVOLVED ON THEIR END.

Q.   ON THE 1412 WEST 94TH PROPERTY, WHO FUNDED THE LOAN ON THAT?

└→ SEE LOAN PURCHASE COMMITMENT TAKEN FROM DEFENSE MOTION TO SUPPRESS 8/3/04

A.   FLAGSTAR BANK.

Q.   AND ON THE 768 EAST 43RD, WHO FUNDED THE LOAN ON THAT?

A.   FLAGSTAR BANK.   └→ SEE LOAN PURCHASE COMMITMENT TAKEN FROM DEFENSE MOTION TO SUPPRESS 8/3/04

Q.   AND ON THESE PROPERTIES -- AND ON THESE PROPERTIES,

EXHIBIT E

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | Jon Steiger (Bar No. 229814)
  | jonsteiger@quinnemanuel.com
3 | Andrea Manka (Bar No. 254026)
  | andreamanka@quinnemanuel.com
4 | 865 South Figueroa Street, 10th Floor
  | Los Angeles, California 90017-2543
  | Telephone: (213) 443-3000
5 | Facsimile: (213) 443-3100

6 | Attorneys for Defendant FLAGSTAR
7 | BANK, INC., a Michigan corporation

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF LOS ANGELES

10 | CENTRAL DISTRICT

11 | JAMES DAVIS BENNETT,                  CASE NO. BC388092

12 |          Plaintiff,                   DEFENDANT FLAGSTAR BANK
                                           INC.'S CONSOLIDATED SEPARATE
13 |     vs.                               STATEMENT OF UNDISPUTED
                                           FACTS IN SUPPORT OF MOTION
14 | MICHAEL S. MEZA; PHILIP A.            FOR SUMMARY JUDGMENT
     TREVINO; SEAN KENNEDY;
15 | FLAGSTAR BANK -a Michigan             Assigned to Hon. J. Elizabeth Allen
     corporation; and DOES 1-30, inclusive, White
16 |                                       Dept. 48
         Defendants.
17 | _____       Date:  December 17, 2009
                                           Time:  8:30 a.m.
18 |                                       Dept.  48

19 |                                       Filing Date: April 23, 2008
20 |                                       Trial Date:  None Set

21 |                                       [Reply Brief; Responses to Plaintiff's
                                           Objections; and Evidentiary Objections
22 |                                       to Plaintiff's Affidavit filed concurrently
                                           herewith]
23 |

24 |         For the convenience of the Court, defendant Flagstar Bank ("Flagstar")

25 | hereby submits this Consolidated Separate Statement of Undisputed Facts in

26 | Support of its Motion for Summary Judgment. This statement includes verbatim

27 | each fact and the supporting evidentiary cites offered by the parties in their

28 |

22193/3236269.1

1   respective separate statements along with Flagstar's responses to the statements

2   made by Plaintiff in the separate statement submitted in opposition to this motion.

3   | **UNDISPUTED FACTS** | **PLAINTIFF'S RESPONSE** |
|---|---|

| **UNDISPUTED FACTS** | **PLAINTIFF'S RESPONSE** |
|---|---|
| 1.  In 2006, Plaintiff James Davis Bennett("Bennett") was convicted of multiple counts of mail, wire and bank fraud, and sentenced to 121 months in federal prison.  Judgment and Probation/Commitment Order sentencing Plaintiff James Davis Bennett to 121 months in federal prison issued by Honorable Judge Alicemarie H. Stotler of the United States District Court for the Central District of California, Southern Division, in USA v. Bennett, Case No. 8:03-cr-00025-AHS ("Plaintiff's Criminal Judgment") attached to Flagstar's Documentary Evidence, Exh. A. | Disputed.  Evidence is not certified as required by Evidence Code § 452.5, it violates Evidence Code § 1200(b) as hearsay, and the Judgment presented is flawed because it is inconsistent with the Second Superseding Indictment to which it references-see Defendant's exhibit A-victims in counts 1 & 2 and compare with victims in counts 1 & 2 in the indictment attached to the compl. as exhibit F. |

### FLAGSTAR'S RESPONSE

(1) Exhibit A is certified.  The certification appears on the back of the last page of Exhibit A.  In any case, it would also be an appropriate subject for Judicial Notice under Cal. Evid. Code §§ 452(c) as an official act of the judicial department of the United States, 452(d)(2) as a record of a court of record of the United States and 452(h) as a fact that is not reasonably subject to dispute that is capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.  Plaintiff has never disputed that Exhibit A is a true and

236269.1

-2-

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|

correct copy of the Criminal Judgment entered in his case.

(2)  Exhibit A falls within the exceptions to the hearsay rule found in Cal. Evid. Code §§ 1280 (public records) and 1300 (judgment of conviction of a crime).

(3)  Plaintiff is barred by the doctrine of collateral estoppel from disputing in this action the propriety of his conviction in his criminal case. E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992); Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985).

| | |
|---|---|
| 2.      Counts 5, 6 and 7 of Plaintiff's conviction were based upon Plaintiff's "aiding and abetting" bank fraud in violation of 18 USC SS 1344, 2(b) committed against Flagstar.  Plaintiff's Criminal Judgment attached to Flagstar's Documentary Evidence, Exh. A | Disputed.  Evidence-Judgment & Probation Commitment Order attached to Defendant's Evid. exhibit A is not certified as required by Evid. Code § 452.5, the "aiding and abetting" bank fraud mentioned in alleged fact 2 conflicts with the bank fraud alleged in fact 1, it violates Evid. Code § 1200(b) as hearsay, and the Second Superseding Indictment referenced in Defendant's Exh. A was never submitted for jury deliberations-see Exh. A attached hereto. |

## FLAGSTAR'S RESPONSE

(1)  Exhibit A is certified.  The certification appears on the back of the last page of Exhibit A.  In any case, it would also be an appropriate subject for Judicial Notice under Cal. Evid. Code §§ 452(c) as an official act of the judicial

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|

department of the United States, 452(d)(2) as a record of a court of record of the United States and 452(h) as a fact that is not reasonably subject to dispute that is capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy. Plaintiff has never disputed that Exhibit A is a true and correct copy of the Criminal Judgment entered in his case.

(2) There is no material dispute between the summary description of Plaintiff's convictions on the counts involving all of Plaintiff's victims in Fact No. 1 and the more specific description of Plaintiff's convictions on the three counts where Flagstar was the victim in this fact.

(3) Exhibit A falls within the exceptions to the hearsay rule found in Cal. Evid. Code §§ 1280 (public record) and 1300 (judgment of conviction of a crime).

(4) Plaintiff is barred by the doctrine of collateral estoppel from disputing in this action the propriety of his conviction in his criminal case. E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992); Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985).

| | |
|---|---|
| 3.    Plaintiff's is a FDIC insured lender, and incurred a loss of approximately $493,000 on the loans. Plaintiff's Criminal Judgment attached to Flagstar's Documentary Evidence, Exhs. A, C. | Disputed. Evidence is not certified as required by Evid. Code § 452.5, it violates Evid Code § 1200(b) as hearsay, lack of personal knowledge (Evid. Code, § 702(a)) add allegations are Irrelevant (Evid. Code §§ 210, 350-351). |

## FLAGSTAR'S RESPONSE

(1) Exhibit A is certified. The certification appears on the back of the

DEFENDANT FLAGSTAR BANK INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|

last page of Exhibit A. In any case, it would also be an appropriate subject for Judicial Notice under Cal. Evid. Code §§ 452(c) as an official act of the judicial department of the United States, 452(d)(2) as a record of a court of record of the United States and 452(h) as a fact that is not reasonably subject to dispute that is capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy. Plaintiff has never disputed that Exhibit A is a true and correct copy of the Criminal Judgment entered in his case.

      (2) Exhibit A falls within the exceptions to the hearsay rule found in Cal. Evid. Code §§ 1280 (public record) and 1300 (judgment of conviction of a crime).

      (3) Plaintiff's "lack of personal knowledge" objection has no merit. This fact is conclusively established against Plaintiff by his conviction. E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992); Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985).

      (4) The facts that Flagstar is federally insured and suffered a loss as a result of Plaintiff's scheme were relevant to his conviction under 18 USC § 1344(2). Those facts, as well as the specific terms of 18 USC § 1344(2) were placed before the Court to explain why Plaintiff's arguments about who was referred to as "the Lender" in transaction documents are not only irrelevant to this motion, but were irrelevant to Plaintiff's conviction. Plaintiff has offered no evidence to dispute these facts.

| | |
|---|---|
| 4.     Plaintiff's Sixth Cause of Action for fraud against Flagstar Bank is based on the allegation that Flagstar employees falsely represented that | Disputed. Plaintiff made allegations that the jury's verdicts in the 25 counts presented to the jury were never disclosed-¶ 11 of the compl. contrary to |

-5-

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| Flagstar was "the lender" on three mortgage transactions (a) to the Federal Bureau of Investigation, (b) to a Federal Grand Jury and (c) to the jury that convicted Plaintiff.  Complaint, ¶ 6, 8, 11, 28. | the facts being identified as undisputed. |

### FLAGSTAR'S RESPONSE

There is no material dispute.  The allegations Plaintiff refers to in paragraph 11 of the Complaint about the jury verdict form not being shown to plaintiff do not involve Flagstar and are not included in his list of alleged fraudulent statements by Flagstar in his Sixth Cause of Action.  Complaint, ¶ 28. They appear to be directed against his attorney at the time -- who has already been dismissed from this case -- and/or an impermissible attempt to relitigate in this case his conviction in his criminal case.  E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992);  Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985).

| 5.    Plaintiff's Complaint alleges Flagstar's alleged misrepresentations led to his conviction stating "[W]ithout Flagstar Bank's misrepresentation there would be no Federal Crime." Complaint, ¶ 28. | Undisputed. |
| 6.    In 2006, Plaintiff James Davis Bennett ("Bennett") was convicted of | Disputed.  See Response/Evidence in 1 above. |

DEFENDANT FLAGSTAR BANK INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|

1  multiple counts of mail, wire and bank
2
3  fraud, and sentenced to 121 months in
4  federal prison.  Plaintiff's Criminal
5  Judgment attached to Flagstar's
6  Documentary Evidence, Exh. A.

**FLAGSTAR'S RESPONSE**

(1)  Exhibit A is certified.  The certification appears on the back of the last page of Exhibit A.  In any case, it would also be an appropriate subject for Judicial Notice under Cal. Evid. Code §§ 452(c) as an official act of the judicial department of the United States, 452(d)(2) as a record of a court of record of the United States and 452(h) as a fact that is not reasonably subject to dispute that is capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.  Plaintiff has never disputed that Exhibit A is a true and correct copy of the Criminal Judgment entered in his case.

(2)  Exhibit A falls within the exceptions to the hearsay rule found in Cal. Evid. Code §§ 1280 (public record) and 1300 (judgment of conviction of a crime).

(3)  Plaintiff is barred by the doctrine of collateral estoppel from disputing in this action the propriety of his conviction in his criminal case.  E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992); Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985).

| | |
|---|---|
| 7.   Counts 5, 6 and 7 of Plaintiff's conviction were based upon Plaintiff's "aiding and abetting" bank fraud in | Disputed.  See Response/Evidence in 2 above. |

.22193/3236269.1

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|

1   violation of 18 USC §§ 1344, 2(b)

2   committed against Flagstar.  Plaintiff's

3   Criminal Judgment attached to

4   Flagstar's Documentary Evidence,

5   Exh. A

### FLAGSTAR'S RESPONSE

(1)  Exhibit A is certified.  The certification appears on the back of the last page of Exhibit A.  In any case, it would also be an appropriate subject for Judicial Notice under Cal. Evid. Code §§ 452(c) as an official act of the judicial department of the United States, 452(d)(2) as a record of a court of record of the United States and 452(h) as a fact that is not reasonably subject to dispute that is capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.  Plaintiff has never disputed that Exhibit A is a true and correct copy of the Criminal Judgment entered in his case.

(2)  There is no material dispute between the summary description of Plaintiff's convictions on the counts involving all of plaintiff's victims in Facts No. 1 and 6 and the more specific descriptions of Plaintiff's convictions on the three counts where Flagstar was the victim in this fact and Fact No. 2.

(3)  Exhibit A falls within the exceptions to the hearsay rule found in Cal. Evid. Code §§ 1280 (public records) and 1300 (judgment of conviction of a crime).

(4)  Plaintiff is barred by the doctrine of collateral estoppel from disputing the propriety of his conviction in this action.  E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992);  Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985).

22193/3236269.1

-8-

DEFENDANT FLAGSTAR BANK INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 8.     Flagstar is a FDIC insured lender, and incurred a loss of approximately $493,000 on the loans.  Plaintiff's Criminal Judgment attached to Flagstar's Documentary Evidence, Exhs. A, C. | Disputed.  See Response/Evidence in 3 above. |

### FLAGSTAR'S RESPONSE

(1)  Exhibit A is certified.  The certification appears on the back of the last page of Exhibit A.  In any case, it would also be an appropriate subject for Judicial Notice under Cal. Evid. Code §§ 452(c) as an official act of the judicial department of the United States, 452(d)(2) as a record of a court of record of the United States and 452(h) as a fact that is not reasonably subject to dispute that is capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.  Plaintiff has never disputed that Exhibit A is a true and correct copy of the Criminal Judgment entered in his case.

(2)  Exhibit A falls within the exceptions to the hearsay rule found in Cal. Evid. Code §§ 1280 (public record) and 1300 (judgment of conviction of a crime).

(3)  Plaintiff's "lack of personal knowledge" objection has no merit. This fact is conclusively established against Plaintiff by his conviction.  E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992);  Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985).

(4)  The facts that Flagstar is federally insured and suffered a loss as a result of Plaintiff's scheme were relevant to his conviction under 18 USC § 1344(2).  Those facts, as well as the specific terms of 18 USC § 1344(2) were placed before the Court to explain why Plaintiff's arguments about who was

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|

referred to as "the Lender" in transaction documents are not only irrelevant to this motion, but were irrelevant to Plaintiff's conviction.  Plaintiff has offered no evidence to dispute these facts.

| | |
|---|---|
| 9.    Plaintiff's Sixth Cause of Action for fraud against Flagstar bank is based on the allegation that Flagstar employees falsely represented that Flagstar was "the lender" DTI three mortgage transactions (a) to the Federal Bureau of Investigation, (b) to a Federal Grand Jury and (c) to the jury that convicted Plaintiff.  Complaint, ¶ 6, 8, 11, 28. | Disputed.  See Response/Evidence in 4 above. |

### FLAGSTAR'S RESPONSE

There is no material dispute.  The allegations Plaintiff refers to in paragraph 11 of the Complaint about the jury verdict form not being shown to plaintiff do not involve Flagstar and are not included in his list of alleged fraudulent statements by Flagstar in his Sixth Cause of Action.  Complaint, ¶ 28. They appear to be directed against his attorney at the time -- who has already been dismissed from this case -- and/or an impermissible attempt to relitigate in this action his conviction in his criminal case.  E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992);  Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985).

.22193/3236269.1

DEFENDANT FLAGSTAR BANK INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 10.    Plaintiff's Complaint alleges Flagstar's alleged misrepresentations led to his conviction stating "[w]ithout Flagstar Bank's misrepresentation there would be no Federal Crime." Complaint, ¶ 28. | Undisputed. |

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS | FLAGSTAR'S RESPONSE |
|---|---|
| 1.    Long Beach City Mortgage loaned money for the purchase of 768 E. 43rd Pl., 243 W. 56th Str., and 1412 W. 94th Pl., all in Los Angeles, California. <br> <u>Plaintiff's Evidentiary Support:</u> <br> Plaintiff's affidavit. | No dispute that Long Beach City Mortgage loaned the money to the borrower and that Flagstar was the source of that money. <br> However, that fact does not change the undisputed facts that (1) all the allegedly fraudulent communications that Plaintiff attributes to Flagstar were privileged under <u>Cal. Civ. Code</u> § 47(b) or that (2) Plaintiff is collaterally estopped from relitigating in this action his conviction in his criminal case. <br> Indeed, as explained in the Reply Brief, the question of what entity is described as "the Lender" was irrelevant to Plaintiff's conviction for violating 18 |

22193/3236269.1

-11-

DEFENDANT FLAGSTAR BANK INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS | FLAGSTAR'S RESPONSE |
|---|---|

1
2

3    U.S.C. § 1344(2).

4

5   2.    The issue of whether Long Beach    No dispute that Long Beach City
6   City-Mortgage made the loans for the    Mortgage loaned the money to the
7   three properties listed in fact 1 was    borrower and that Flagstar was the
8   determined by the Federal Judge.    source of that money.
9   Plaintiff's Evidentiary Support:    However, that fact does not change the
10  Plaintiff's affidavit.    undisputed facts that (1) all the allegedly
11      fraudulent communications that Plaintiff
12      attributes to Flagstar were privileged
13      under Cal. Civ. Code § 47(b) or that (2)
14      Plaintiff is collaterally estopped from
15      relitigating in this action his conviction
16      in his criminal case.
17      Indeed, as explained in the Reply Brief,
18      the question of what entity is described
19      as "the Lender" was irrelevant to
20      Plaintiff's conviction for violating 18
21      U.S.C. § 1344(2).  Therefore, whatever
22      the court in Plaintiff's criminal case ruled
23      about who would be called "the lender"
24      was not necessary to the ultimate
25      judgment.
26      Finally, Flagstar was not a party to
27      Plaintiff's criminal case, so rulings in
28

.22193/3236269.1

DEFENDANT FLAGSTAR BANK INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS | FLAGSTAR'S RESPONSE |
|---|---|

1
2
3     that case are not binding upon Flagstar.
4

5   3.     At a later date Flagstar Bank     No dispute that Long Beach City

6 purchased the loans on the three     Mortgage loaned the money to the

7 properties listed in fact 1 above this issue     borrower and that Flagstar was the

8 was determined by the Federal Judge.     source of that money. Plaintiff offers no

9 Plaintiff's Evidentiary Support:     evidence that Flagstar's financing

10 Plaintiff's affidavit.     occurred "at a later date."

11     However, that fact does not change the

12     undisputed facts that (1) all the allegedly

13     fraudulent communications that Plaintiff

14     attributes to Flagstar were privileged

15     under Cal. Civ. Code § 47(b) or that

16     (2) Plaintiff is collaterally estopped from

17     relitigating in this action his conviction

18     in his criminal case.

19     Moreover, as explained in the Reply

20     Brief, the question of what entity is

21     described as "the Lender" was irrelevant

22     to Plaintiff's conviction for violating 18

23     U.S.C. § 1344(2).

24

25   4.     The Federal Jury hearing the could     Plaintiff is barred by the doctrine of

26 not have determined Flagstar was the     collateral estoppel from disputing in this

27 victim in counts 5, 6, and 7 in the Second     action the propriety of his conviction in

28

22193/3236269.1

DEFENDANT FLAGSTAR BANK INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| PLAINTIFF'S ADDITIONAL MATERIAL FACTS | FLAGSTAR'S RESPONSE |
|---|---|

1
2

3  Superseding Indictment used by
4  Defendant to support issue 2-Doctrine of
5  Collateral Estoppel because the Second
6  Superseding Indictment was never used
7  for jury deliberations.
8  Plaintiff's Evidentiary Support:
9  Plaintiff's affidavit.

his criminal case. E.g., Smith v. State Farm, 5 Cal. App. 4th 1104, 1115, 7 Cal. Rptr. 2d 131, 138 (1992); Miller v. Superior Court, 168 Cal. App. 3d 376, 381, 214 Cal. Rptr. 125, 128 (1985). Moreover, the transcript attached as Exhibit A to Plaintiff's Affidavit indicates, on page 3 lines 10 through 12, that the Second Superseding Indictment *was* submitted to the jury "as the trial indictment" and was referred to in the court's instructions as "the indictment."

16  DATED:  December 11, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By
John P. D'Amato
Attorneys for Defendant FLAGSTAR BANK, INC., a Michigan corporation

.22193/3236269.1

DEFENDANT FLAGSTAR BANK INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT